_____

Christine M. Nordgren,                                    Court File No.

                Plaintiff,

vs.                                                         **DEMAND FOR JURY TRIAL**

Hennepin County, Hennepin County
Department of Human Services and Public
Health, David J. Hough, Hennepin County
Administrator, Jodi Wentland, Hennepin County
Director of Human Services, Joan Granger-Kopesky,
Director of Hennepin County Child and Family Services,
Mary Kay Libra, Hennepin County Child and Family
Services Social Worker, Jodi Harpstead, Commissioner,
Minnesota Department of Human Services,
Michael O. Freeman, Hennepin County Attorney,
Katy L. Stesniak, Assistant Hennepin County Attorney,
Nystrom & Associates, Ltd., Rochelle Anderson,
Craig Rice, Susan Vinge,

                Defendants.

_____

## COMPLAINT
_____

    Christine M. Nordgren, for her Complaint against the Defendants, states and alleges as follows:

### INTRODUCTION

01.    This lawsuit is brought by Plaintiff Christine M. Nordgren to secure redress of the deprivations by municipal defendants, at all times herein acting under color of state law, of rights secured to Plaintiff under the United States Constitution,

including the Fourth, Fifth and Fourteenth Amendments, and against non-municipal defendants under federal and state law where applicable.

## JURISDICTION

02.     This Court has jurisdiction herein pursuant to 28 U.S.C. §1331 and 1343(a)(4) in that this case arises under the laws of the United States, specifically, the Civil Rights Act of 1866 and 1991, 42 U.S.C.§1983, *et seq.*, and 42 U.S.C. §1985, *et seq.*

03.     This Court may invoke supplemental jurisdiction over the related state law claims herein pursuant to 28 U.S.C. §1367(a) based on the following: Plaintiff's claims under the various tort claims alleged herein form part of the same case or controversy under Article III of the United States Constitution set forth above in that said state law claims share all common operative facts with her federal law claims, and the parties are identical. Resolving all state and federal claims in a single action serves the interests of judicial economy, convenience, and fairness to the parties by avoiding litigation of similar claims in multiple forums.

## VENUE

04.      The unlawful practices giving rise to the claims of Plaintiff occurred in this district; Defendant Hennepin County and Hennepin County Department of Human Services and Public Health operates in this district; Defendant Nystrom & Associates, Ltd. maintains several of its satellite offices and operational facilities in this district; a substantial part of the events giving

rise to these claims occurred in Hennepin County, Minnesota, accordingly venue
properly lies in this district under 28 U.S.C. § 1391(b)(2).

## PARTIES

05.  Plaintiff Christine M. Nordgren (hereinafter "Plaintiff" or "Nordgren") is citizen
of the United States and a resident of Hennepin County in the State of Minnesota.
Plaintiff has completed two tours of duty in the United States Army first in Iraq
from 2005 to 2007 and secondly in Afghanistan from 2010 to 2012.

06.  At all times herein, Defendant Hennepin County ("County") is a public municipal
entity and a political subdivision created and authorized under the laws of the
State of Minnesota. The County of Hennepin has purchased liability insurance
sufficient under Minnesota Statutes §3.736 to waive its immunity against civil
liability.

07.  The County of Hennepin operates Hennepin County Department of Human
Services and Public Health and its Children and Family Services ("CFS") division,
which is the County's department implementing Minnesota Department of
Human Service Standards and Minnesota State Statutes.

08.  At all times applicable herein, the Hennepin County Department of Human
Services and Public Health ("Department") was and is a subdivision or entity of
the County.

09.  Jodi Harpstead is the Commissioner of the Minnesota Department of Human
Services.   The Minnesota Department of Human Services is legally obligated to
ensure Hennepin County Department of Human Services and Public Health, the
social service agency responsible under Minnesota law to operate the local child

protection programs, is in compliance with federal and state laws. This would include, but is not limited to, the implementation of the Department, training, creating manuals, enforcing and disciplining social workers for non-compliance in matters of juvenile protection services. She is sued in her official capacity as an employee of the State of Minnesota. Upon information and belief, Harpstead is a citizen and resident of Minnesota.

10. Defendant Michael O. Freeman, at all times relevant to the allegations of this Complaint, was the Hennepin County Attorney, and acted during his employment and/or under color of state law. He is sued herein solely in his official capacity. In that capacity, he serves in a supervisory and/or policymaking role, oversees the Assistant County Attorneys of Hennepin County Attorney's Office and is responsible for ensuring the Hennepin County Attorney's Office complies with its legal obligations in carrying out its duties under Minnesota Statute §388, the provisions under the Juvenile Court Act and the Minnesota Rules of Juvenile Protection Procedures. Upon information and belief, Freeman is a citizen and resident of Minnesota.

11. Defendant Katy L. Stesniak, at all times relevant to the allegations of this Complaint, was an Assistant County Attorney with Hennepin County Attorney's Office and acted during her employment and/or under color of state law. She is sued in her individual and her official capacity as an employee of the County of Hennepin. Upon information and belief, Stesniak is a citizen and resident of Minnesota.

12. Defendant David J. Hough is the Hennepin County Administrator sued herein

solely in his official capacity. He provides county-wide oversight to each of Hennepin County's departments, including the Department and CFS and is responsible for ensuring that Hennepin County complies with its legal obligations. Upon information and belief, Hough is a citizen and resident of Minnesota.

13. Defendant Jodi Wentland is the Assistant Hennepin County Director of Human Services and is sued herein solely in her official capacity. In that capacity, Wentland serves in a supervisory and/or policymaking role and acted during her employment and/or under color of state law, oversees CFS and is responsible for ensuring that Hennepin County complies with its legal obligations with respect to families served by CFS. Upon information and belief, Wentland is a citizen and resident of Minnesota.

14. Defendant Joan Granger-Kopesky is the Director of CFS and is sued herein solely in her official capacity. In that capacity, Kopesky serves in a supervisory and/or policymaking role and acted during her employment and/or under color of state law. She is responsible for CFS's policies, practices, and operations, and for ensuring that CFS and the private agencies with which CFS contracts comply with all applicable federal and state law. Upon information and belief, Kopesky is a citizen and resident of Minnesota.

15. Defendant Mary Kay Libra, at all times relevant to the allegations of this Complaint, was a Supervisor and Social Worker with the Hennepin County Department of Human Services and Public Health and its Children and Family Services ("CFS") division. In that capacity, Libra serves in a supervisory and/or

policymaking role and acting during her employment and/or under color of state law.  She is sued in her individual and her official capacity as an employee of Hennepin County Department of Human Services and Public Health and its Children and Family Services.  Upon information and belief, Libra is a citizen and resident of Minnesota.

16. Defendant Nystrom & Associates, Ltd. ("Nystrom") is a corporation organized and existing under the laws of the State of Minnesota with its principal place of business located at 1900 Silver Lake Road, Ste. 110, New Brighton, Minnesota, 55112.  Brian Nystrom is listed as the Chief Executive Officer with the Registered Office Address located at 1900 Silver Lake Road, Ste. 110, New Brighton, Minnesota, 55112.

17. Rochelle Anderson, at all times relevant to the allegations of this Complaint, was an acting employee of Nystrom & Associates, Ltd.  She is sued in her individual and her official capacity.

18. Craig Rice, at all times relevant to the allegations of this Complaint, was an acting employee of Nystrom & Associates, Ltd.  He is sued in his individual and his official capacity.

19. Susan Vinge, at all times relevant to the allegations of this Complaint, was an acting employee of Nystrom & Associates, Ltd.  She is sued in her individual and in her official capacity.

LIABILITY OF NYSTROM & ASSOCIATES, LTD, INC. UNDER THE THEORY OF RESPONDENT SUPERIOR AND VICARIOUS LIABILITY

20. All of the acts and failures to act alleged herein against non-municipal

defendants were duly performed by and attributable to all non-municipal

defendants, each acting as a successor, agent, executive, manager, alter ego,

employee, indirect employer, joint employer, integrated enterprise and/or under

the direction and control of the others, except as specifically alleged otherwise.

Said acts and failures to act were within the scope of such agency and/or

employment, and each non-municipal defendant participated in, approved

and/or ratified the unlawful acts and omissions by the other non-municipal

defendants complained of herein.  Whenever and wherever reference is made in

this Complaint to any act by a non-municipal defendant or non-municipal

defendants such allegations and references shall be deemed to mean acts and

failures to act of each non-municipal defendant acting individually, jointly,

and/or severally and/or on behalf of Nystrom & Associates, Ltd.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

21.   No administrative exhaustion or other conditions precedent are required prior

to the filing of claims under 42 U.S.C. §1983 and 42 U.S.C. §1985.

## FACTUAL ALLEGATIONS

22.   Under established case law, Minnesota courts have ruled parents cannot be

forced to waive their Fifth Amendment right against self-incrimination as a

condition of therapy outlined in a court-ordered case plan.  Parents who are

denied their Fifth Amendment rights during a pending Child in Need of

Protection or Services ("CHIPS") and/or a Termination of Parental Rights

("TPR") action are caught in a catch-22 scenario. If parents admit to allegations of abuse they may face criminal charges or even more severe criminal charges than the ones they already face. More importantly, they likely forfeit any chance to prevail in an action for termination of their parental rights. See *In re Welfare of Children of M.L.A.*, 730 N.W.2d 54, 56-8 (Minn.App.2007)(parents admitting child suffered nine fractures constitutes grounds for TPR of both children under Minn.Stat. §260C.301, subd. 1(b)(6)(2006)). However, parents who refuse to make admissions to false allegations of abuse in the context of court-ordered family counseling are regarded as noncompliant if therapists dictate therapeutic goals of reunification cannot be reached unless the parents admit guilt. In this last scenario, parents risk losing their parental rights because they are deemed to have failed to adequately participate in the court ordered family therapy. Several seminal Minnesota cases have provided guidance to the courts so parents do not have the face the predicament of such a lose-lose proposition.

23. In Minnesota, the Fifth Amendment right from self-incrimination can be invoked in civil as well as criminal proceedings and can be invoked at any time during the proceedings. *Parker v. Hennepin County District Court, Fourth Judicial District*, 285 N.W.2d 81, 82-83 (Minn. 1979). To invoke the Fifth Amendment right in any civil proceeding, it must be evident the party's testimony "would enhance the threat of criminal prosecution such that reasonable grounds exist to apprehend its danger." *Id.* at 83.


**HENNEPIN COUNTY- CASE ONE**

**I.** ***Matter of Welfare of J.W. and A.W.,* 374 N.W.2d 307 (Minn.App. 1985).**
***Matter of Welfare of J.W. and A.W.,* 415 N.W.2d 879 (Minn. 1987).**

24.    The seminal case concerning Minnesota parents' constitutional Fifth

Amendment right from self-incrimination in the context of child protective

service proceedings was highlighted in *Matter of Welfare of J.W. and A.W.*, 415

N.W.2d 879, 882 (Minn. 1987). A fact of most critical importance is this case

arose out of Hennepin County and involved the Hennepin County Department of

Human Services and Public Health and Children and Family Services.

25.    Each case highlighted in this Complaint arose out of Hennepin County and it is

presumed the Hennepin County Attorney's Office who represented the

Department in these actions were familiar and are still familiar with the

disposition and holdings relevant to the cases specified herein but failed to apply

these case rulings in each subsequent case that came after them.

26.    In the case, *Matter of Welfare of J.W. and A.W.*, the appellants' nephew, H.L., age

two and in the appellants' care at the time, was taken to the hospital where it

was determined he suffered serious injury to his abdomen and he died a few

days later. *Matter of Welfare of J.W. and A.W.,* 374 N.W.2d 307, 308 (Minn.App.

1985).

27.    The Minnesota Supreme Court was presented with the issue of whether a

Hennepin County court-ordered treatment plan requiring, as part of the

psychological evaluations, the parents' explanation of the death of their two-year

old nephew offended the parents' Fifth Amendment rights. The Minnesota

Supreme Court cited to *Lefkowitz* stating "when a State compels testimony by

threatening to inflict potent sanctions unless the constitutional privilege is

surrendered, that testimony is obtained in violation of the Fifth Amendment". *Matter of Welfare of J.W. and A.W.*, 415 N.W.2d at 882 (Minn. 1987)(citing *Lefkowitz v. Cunningham*, 431 U.S. 801, 805 (1977)). The Court held the trial court's order requiring the appellants to incriminate themselves violates appellants' Fifth Amendment rights and is unenforceable. *Matter of Welfare of J.W.*, 415 N.W.2d at 883. The Court explicitly stated, ***"the state may not compel therapy treatment that would require appellants incriminate themselves".*** *Id.* (Emphasis added). Moreover, the Court held that appellants' noncompliance with the order requiring them to divulge details of the nephew's death to psychologists cannot be used as grounds under Minn. Stat. §260.221 (5)(1986) for termination of parental rights or for keeping their children in foster care. *Id.*

**HENNEPIN COUNTY- CASE TWO**

> ## II. *In the Matter of J.G.W. and J.L.W.*, 429 N.W.2d 284 (Minn.App. 1988).
> *In the Matter of J.G.W. and J.L.W.*, 433 NW 2d 885 (Minn.1989)

28.   This case presents the first evidence of the Hennepin County Attorney's Office and Hennepin County Department of Human Services and Public Health's purposeful disregard for precendential rulings in cases of which the Department was an active participant. This case establishes the beginning of a disturbing pattern and practice and policy of Hennepin County Attorney's Office and the Department purposefully neglecting to implement into its training, instructions and protocols practical guidelines to prevent its social workers and Assistant County Attorneys from violating the established civil and constitutional rights of

Minnesota parents.

29.     The Minnesota Court of Appeals revisited the same issue in the following case *In the Matter of Welfare of J.G.W. and J.L.W.* In the *J.G.W.* case, the father appealed the trial court's order requiring him to cooperate with the children's therapist who required admission of sexual abuse as a prerequisite to regaining visitation rights. *In the Matter of J.G.W. and J.L.W.*, 429 N.W.2d 284, 285 (Minn.App. 1988). The father was caught in the dilemma where the only way for him to regain contact with his children was to first admit to having sexually abused them. *In the Matter of J.G.W.*, 429 N.W.2d at 285. The children's psychologist believed recognition of one's own actions was a necessary step in accomplishing effective therapy. *Id.* The Court of Appeals held the state was unlawfully attempting to elicit the father's testimony by threatening a "potent" sanction requiring the admission of sexual abuse as a precondition in reestablishing visitation rights. *In re Matter of J.G.W.*, 429 N.W.2d at 286. Such action requiring the admission of sexual abuse as precondition to reestablishing visitation rights, the Court ruled, was a violation of the father's Fifth Amendment right against self-incrimination. *In the Matter of J.G.W.*, 429 N.W.2d at 287.


**HENNEPIN COUNTY- CASE THREE**

>    **III.     *In the Matter of the Welfare of M.D.O.,* 450 N.W.2d 655 (Minn.App. 1990)**
>    ***In the Matter of the Welfare of M.D.O.,* 462 N.W.2d 370 (Minn.1990)**

30.     The Hennepin County Attorney's Office and Hennepin County Department of Human Services and Public Health continued to exercise its pattern and practice

of purposefully defying Minnesota rulings from cases of which the Department was a party and Hennepin County Attorney's Office represented the Department as demonstrated in the case *In the Matter of the Welfare of M.D.O.* and permitted its agents to blatantly violate the rights of another parent.

31.   Purposefully neglecting the previous 1987 Minnesota Supreme Court case *Matter of Welfare of J.W. and A.W.* holding that the Department is not permitted to issue a court order listing as one of its goals the requirement that a parent explain the cause of the death of a child, the Department willfully violated another mother's Fifth Amendment right of self-incrimination in the same manner in the following case, *In the Matter of the Welfare of M.D.O.*, 450 N.W.2d 655 (Minn.App. 1990).

32.   On July 14, 1986, Janet Ostlund brought her adopted, developmentally delayed daughter, Maria, to the hospital with a severe brain injury claiming the child fell from the sofa.  *In the Matter of the Welfare of M.D.O.*, 450 N.W.2d 655, 656 (Minn.App. 1990).   Her daughter died the next day.  *Id.*  The State of Minnesota charged Ostlund with second degree murder claiming she killed Maria by intentionally shaking her.  *Id.*

33.   In September 1986 while awaiting her criminal trial, Ostlund gave birth to a son, M.D.O.  The Department filed a petition for legal custody and for dependency and neglect due in part to the allegations of second-degree murder of Ostlund's daughter.  *Id.*  The Department prepared a case plan which included a goal of getting the "Parents to provide a reasonable explanation of the death of Maria consistent with the medical findings."  *Id.*  Upon advice of counsel, Ostlund

refused to sign the case plan citing the pending criminal trial. *In the Matter of the Welfare of M.D.O.*, 462 N.W.2d 370, 373 (Minn. 1990). In January 1987 Ostlund was convicted of second-degree murder and her appeal was affirmed by the Minnesota Court of Appeals. *In the Matter of the Welfare of M.D.O.*, 450 N.W.2d 655, 656 (Minn.App. 1990).

34.   On July 16, 1987, the Department petitioned for termination of Ostlund's parental rights of M.D.O. on the basis that Ostlund was palpably unfit as a parent and that Ostlund has refused or neglected to comply with the duties imposed as a parent. *In the Matter of the Welfare of M.D.O.*, 462 N.W.2d at 373. At the TPR trial, the Department's rebuttal expert witness testified that therapy is not likely to be effective if the parent cannot admit to a problem with parenting and abuse. *Id.* Ostlund, on the other hand, presented testimonial evidence from several psychologists and psychiatrists that an admission of culpability was not a precondition to effective therapy. *In the Matter of the Welfare of M.D.O.*, 462 N.W.2d 373. The trial court found the Department had not met its burden on the bases cited and denied the Department's petition. *Id.* The Minnesota Court of Appeals overturned the lower court's ruling and a petition for review was made to the Minnesota Supreme Court. *Id.*

35.   The Minnesota Supreme Court found troubling the appellate court's assertion that "an admission of culpability is necessary for effective therapy" and the lower court's deduction that if Ostlund refuses to admit culpability then Ostlund could not benefit from therapy and could not be rehabilitated. *In the Matter of the Welfare of M.D.O.*, 462 N.W.2d at 377. The Court observed the expectations the

Department placed on Ostlund were difficult especially in light of the Department's admitted failure to provide services, counseling or assistance to Ostlund to rehabilitate her behaviors.  *Id.*

36.    Moreover, the Minnesota Supreme Court highlighted the conflicting expectations of the social workers who were handling Ostlund's case.  *Id.* Steve Heckler, the first social worker working on the case, testified the Department wanted an explanation of Maria's death consistent with the medical findings as outlined in the Hennepin County Juvenile Court's court-order case plan.  *Id.*  The second social worker assigned to the case testified Ostlund had to admit responsibility for Maria's failure to thrive, for a pattern of abuse against Maria and for admitting responsibility for shaking the child to death.  *Id.*  Apart from these admissions, Department conceded to the fact that Ostlund was fulfilling other case plan goals.  *Id.*

37.    The Minnesota Supreme Court would not make a definitive ruling on whether "an initial admission of culpability is a prerequisite to rehabilitative therapy".  *Id.,* citing to *In re Welfare of J.W.,* 415 N.W.2d 879 (Minn. 1987).  Rather the Court concluded that regardless of whether the case plan ordered by the court includes a requirement of an admission of culpability, if the Department considered rehabilitation without an initial admission of culpability impossible, it bears the onus of proving the necessity of a prerequisite admission.  *Id.*, at 378.  The Minnesota Supreme Court determined under the facts elucidated in the case, the trial court found Ostlund profited from the treatment programs available in prison and given the opportunity Ostlund would be a good candidate for therapy.

*Id.*  Additionally, the trial court found an admission of culpability was not

necessary before Ostlund could benefit from therapy, noting "Ostlund has

admitted her shortcomings as a parent and has opened herself up to the benefits

of counseling and found it to be helpful".  *Id.*


**HENNEPIN COUNTY- CASE FOUR**

**IV.**     **In the Matter of the Welfare of the Child of J.P. and M.G., Parents,**
**2006 WL 3290624 (Minn.App Nov. 14, 2006).**
**Hennepin County District Court File No. J3-03-71753**

38.    Acting consistently with its pattern and practice of purposefully defying

Minnesota rulings from cases of which the Department was a party and the

Hennepin County Attorney's Office represented the Department, the Department

continued to act in contravention of the 1989 Minnesota Supreme Court ruling of

*In the Matter of Welfare of J.G.W. and J.L.W.*  This case held it is unlawful for the

Department to condition visitation rights upon first obtaining an admission of

abuse from a parent.  The Department and Hennepin County Attorney's Office

willfully violated the Fifth Amendment by terminating the parental rights of a

parent accused of sexual misconduct by arguing he did not comply with a court

order because of his denial of sexual misconduct.  *In the Matter of the Welfare of*

*the Child of J.P. and M.G., Parents,* 2006 WL 3290624 (Minn.App Nov. 14, 2006).

39.    In December 2003, the Department filed a petition to have the minor T.P.

adjudicated a child in need of protection or services following a criminal

investigation of T.P.'s father, M.G.  M.G. was alleged to have had inappropriate

sexual contact with one of T.P.'s friend while at a sleepover at M.G.'s apartment.

*In the Matter of the Welfare of the Child of J.P. and M.G., Parents,* 2006 WL
3290624 at *1 (Minn.App Nov. 14, 2006).  The state filed no criminal charges
against M.G. for the alleged conduct and M.G. has consistently denied the
allegations.  *Id.*

40.  The Department filed a petition to permanently transfer the physical and legal
custody of T.P. to her mother J.P.  only one month after having establishing M.G.'s
case plan.  *In the Matter of the Welfare of the Child of J.P. and M.G., Parents,* 2006
WL 3290624 at *3.  The Department alleged that despite the county's reasonable
efforts to facilitate reunification, M.G had failed to correct the conditions that led
to the CHIPS adjudication and that M.G. has failed to complete the court-ordered
case plan. *Id.*

41.  At trial, the child protection case worker opined M.G. failed to complete his case
plan and cooperate with the services offered because M.G. never admitted he had
inappropriately touched his accuser such that M.G. only completed the case plan
"evaluatively" and not "substantively".  *Id.*

42.  The trial court determined that M.G. had failed to substantially comply with the
court-ordered case plan and he did not sufficiently utilize the services offered to
correct the conditions which led to the out-of-home placement.  Furthermore,
the Court found that M.G. has "refused to accept any form of responsibility for
past behavior and actions."  The trial court found clear and convincing evidence
supporting transference of legal and physical custody of the child to J.P.  *In the
Matter of the Welfare of the Child of J.P. and M.G., Parents,* 2006 WL 3290624 at *4.

43.  In reviewing the record, the Minnesota Court of Appeals determined the trial

court made its findings based on M.G.'s refusal to admit to the allegations of inappropriate sexual contact with his accuser. The appellate court would not affirm the district court's ruling as doing so would require it to "condone the _implicit_ requirement that M.G. either admit to a criminal offense or permanently lose custody of his child". *Id.,* citing to *In re Welfare of J.W.,* 415 N.W. 2d 879, 883 (Minn. 1987)("the state may not compel therapy treatment that would require appellant to criminate [himself]")(emphasis added). *In the Matter of the Welfare of the Child of J.P. and M.G., Parents,* 2006 WL 3290624 at *5. The appellate court determined that the imposition of an unstated and improper condition [conditioned custody on an admission] and M.G.'s denial leading to the court's determination that M.G. failed to substantially comply with the case plan was in error. *Id.*

44.    The Court held M.G.'s denial of an allegation of improper sexual contact is not a permissible basis to determine non-compliance, and the denial should not have been treated as clear and convincing evidence that M.G. failed to substantially comply with his case plan and utilize the services offered to correct the conditions that led to the out-of-home placement. *In the Matter of the Welfare of the Child of J.P. and M.G., Parents,* 2006 WL 3290624 at *6. The Court reversed the permanency order and remanded for further proceedings to determine permanent custody of T.P. without reliance on the denial. *Id.*


**HENNEPIN COUNTY- CASE FIVE**

*V.*     **In the Matter of the Welfare of the Child of:  I.M.W. and R.J.M.**
**2015 WL 4611999 (Minn.App.  Aug. 3, 2015)**

45. It appears according to the Hennepin County Department of Human Services and Public Health's pattern and practice of subjecting parents to the unlawful threat of losing their parental rights unless parents admit to allegations of abuse, the Department and the Hennepin County Attorney's Office attempted to deprive yet again another parent their Fifth Amendment rights in the case, *In the Matter of the Welfare of the Child of: I.M.W. and R.J.M.*

46. Although the court record is not developed, the appellant, R.J.M, in the case, *In the Matter of the Welfare of the Child of: I.M.W. and R.J.M.,* is another person who claim the Department also attempted to violate his Fifth Amendment right from self-incrimination in his case. *In the Matter of the Welfare of the Child of: I.M.W. and R.J.M.*, 2015 WL 4611999 at *15 (Minn.App. Aug. 3, 2015).

47. The appellant, R.J.M. raised the issue of the violation of his Fifth Amendment and cited his failure to admit to physical abuse of his child B.M.W. as a basis for the Department terminating his parental rights to B.M.W. *Id.* The Court only briefly distinguished R.J.M.'s case from previous Minnesota case rulings and stated the district court did not require I.M.W. or R.J.M to admit to past abuse, but rather "indicated how their lack of admissions showed the ineffectiveness of treatment aimed at correcting their parenting deficiencies". *Id.*

CASEY FAMILY SERVICES REPORT ON HENNEPIN COUNTY DEPARTMENT

48. In June of 2015, after a number of publicized cases of children who died in the custody of Minnesota child protection services, the Casey Family Services issued its Hennepin County Assessment and Recommendation ("Casey Report") after an

investigation and interview with over 140 stakeholders including CFS managers, social workers and supervisors, law enforcement officers, judges, guardian ad litems, county attorneys, public defenders, birth parents, community services providers, and mandated reporters.  (Casey Report, Pg. 1).

49.     The Report which "summarizes findings and recommendations of a review of the child protection practices in Hennepin County Children and Family Services (CFS)" (Casey Report, Pg. 2), show a picture of disjointed and disheveled loosely formed organization that did not provide its workers with any clear guidelines or policies in order to perform their duties.

50.     In particular on page 9 of the Casey Report, investigators found "[f]ocus group and interview participants identified numerous gaps in the system which they believe have compromised child safety."   Casey Report, Pg. 9.  Among the gaps identified were: "internal silos that prevent information sharing" and "***policy inconsistencies or inadequate policy guidance***".  *Id.* (Emphasis added).

51.     The Case Report further elaborated stating, "[M]any focus group and interview participants described a system that is overly complex, specialized and compartmentalized, lending itself towards silos and role confusion.  Several participants described a fragmented work environment with divisions and work units focused on meeting their own needs for resources and personnel, rather than working cooperatively toward common goals." Casey Report, Pg. 15.

52.     The Casey Report cites a problem in the area of clear and consistent internal communications from leadership and feedback processes for listening to staff concerns.

53.    The Report found that participant expressed a dissatisfaction and cited internal communications were unhelpful 55 times compared to 4 times when they were mentioned as helpful.

54.    Additionally, the CFS staff were vocal about "policy inconsistencies or poor policy guidance, which were mentioned 133 times." The inconsistencies addressed the following issues: intake screening decisions, ***frequent or arbitrary changes in policies and contradictory or undocumented policies.*** (Emphasis added).

55.    The Report also highlights that "the available training programs are viewed as insufficient for developing basic job skills among new staff." The topics viewed by participants as areas in which more training is needed in order of frequency is the following: 1) ***leadership and communications***, 2) cultural competency, 3) ***case supervision***, 4) intake screening decision-making and 5) ***provider relationships and community collaboration.*** (Emphasis added). Casey Report, Pg. 21.

56.    The Report also mentions "system inefficiencies and incentive misalignment" as a result from where "CFS has steadily increased its policy and procedural requirements over time" and reveal "focus groups and interview participants described an overwhelming burden of administrative tasks to achieve compliance with various regulations." Casey Report, Pg. 24

57.    These concerns and problems in Hennepin County Department of Human Services and Public Health policy practices were well entrenched when Nordgren was introduced to its CFS division and the Child Protective proceedings in August 25, 2015.

### VI. In the Matter of the Welfare of the Children of: C.N., Parent, Hennepin County District Court File No: 27-JV-16-3189 (October 23, 2017)

58.     Hennepin County Department of Human Services and Public Health and the Hennepin County Attorney's Office, in keeping with its pattern and practice of ignoring years of precendential and controlling case law where the cases arose out of the Department, with blatant disregard violated Plaintiff Christine Nordgren's Fifth Amendment rights resulting in the termination of her parental rights to her two children.

59.     Prior to the Orders on Termination of Parental Rights being issued, Christine M. Nordgren had full legal and physical custody of her two children, A.J.N.and N.E.N. Nordgren was a single mother who returned from her second tour of duty in the U.S. military and was readjusting to civilian life and working two jobs to support her children.

60.     On August 12, 2015, Hennepin County case worker and investigator Sally Hoover made an unannounced visit and found the two children, aged 10 (nearly 11) and 8 at the time, alone in the home while Nordgren was working at her second job in the afternoon.   Prior to this time the Department advised her this action was permissible.

61.     Further, while assigned to the case, Hoover received another report from N.E.N.'s teachers who observed red marks on her arm.   Hoover made another unannounced visit to Nordgren's home on August 20, 2015 relating to the red marks on N.E.N.'s arm.   Hoover would later determine there was no validity to

this claim as the teachers subsequently reported they had seen N.E.N. sucking her arm.

62. Overwhelmed and frustrated by the intrusion and repeated false assertions of physical abuse, Nordgren requested Hoover leave her home. Meanwhile, Hoover called the police and directed the children be taken for a 72-hour hold as a rouse to get Nordgren's children out of her care and custody.

63. An emergency protective care hearing was heard on August 25, 2015 and an Order was issued. Hennepin County did not properly place the children with Nordgren's brother, Peter Nordgren, pursuant to Minn. Stat. 260C.212, subd. 2 (2014) but separated the children placing A.J.N. with Kelly Aldrich and N.E.N. with Aldrich's sister, Valerie German.

64. The Hennepin County also filed a Child in Need of Protection or Services ("CHIPS") petition on August 25, 2015. In its Order for CHIPS Adjudication and Foster Care Placement filed on October 9, 2015, the CHIPS court adjudicated the children in need of protection or services based on the fact that the children were left home overnight without adult supervision and the children were not mature enough to be left alone.

65. █████████████████████████████████████████
█████████████████████████████████████████████
█████████████████████████████████████████
███████████████████████████████████████████████
████████████████████████████████████████
███████████████████████████████████████████████



66.    On January 13, 2016 Hennepin County Juvenile Court Judge ordered a No

Contact order barring Nordgren from any continued visitations or

communications with her children as a result of a Christmas visit where the

family members exhibited heightened emotions.   The No Contact order

continued after Nordgren's motion to have visitations resumed on or about April

20, 2016 was denied and remained in place throughout the pendency of the TPR

case.   The No Contact Order was never lifted from January 13, 2016 based upon

the recommendation of the psychologists from Nystrom until the Order of

Termination of Parental rights in October 2017 ultimately affecting the outcome

of the case.

67.    A Petition for the Termination of Parental Rights ("TPR") was filed on June 7,

2016, a little over 8 months after the children were ordered in out-of-home

placement on August 25, 2015.

68. The State of Minnesota brought charges of gross malicious punishment of a child against Nordgren in late October 2015 and the matter was concluded on October 11, 2016 while the TPR proceedings were underway. However the charges of malicious punishment were ultimately dropped and Nordgren was not adjudicated guilty of abusing her children but rather for disorderly conduct stemming from her interaction with Hennepin County case worker Sally Hoover.

69. The TPR matter was heard before the Honorable James Moore at trial on February 8 and February 10, 2017, May 15, 16, 17, 2017 and September 21 and September 22, 2017.

70. Unbeknownst to Plaintiff during her time involved with Hennepin County Department of Human Services and Public Health and its Children and Family Services division, the Nystrom family therapist, Rochelle Anderson knowingly conspired with Department's Social Worker Mary Kay Libra to deprive Nordgren of her constitutional Fifth Amendment and civil rights.

71. The evidence of Anderson and Libra's coordinated efforts to deprive Plaintiff of her rights was documented and preserved in the transcripts of Plaintiff's TPR trial proceedings. Nystrom family therapist and Anderson's relevant testimony can be found in the TPR trial transcript from May 15, 2017. The Department Social Worker Mary Libra's testimony can be found in the TPR trial transcripts of September 21 and September 22, 2017.





[REDACTED]

72. [REDACTED]

73. Based upon testimony of the therapists from the provider groups the Department found to treat Plaintiff, it is apparent the Department did not provide any meaningful or reasonable efforts to help reunify the family.

74. Craig Rice, the children's therapist, began working at Nystrom & Associates, Ltd. at the same time he began counseling the Nordgren children. He was not licensed. He had never done reunification therapy and had never heard of the term before. This was the first child protection case plan he worked on relating to counseling children.

75. While Mr. Rice acknowledged reunification was the goal of the case plan, he never sought to engage in reunification for the family. In fact in over a year and three months of working with the children, Rice testified that he made no

attempts to reunify the children with their mother and the sessions never evolved into anything past calming the children down.

76. Rochelle Anderson, from Nystrom & Associates, Ltd., was brought in the assess Nordren's readiness for family therapy. She was tasked to begin the reunification process with Nordgren as she had previous experience with reunification. However Anderson testified because Nordgren would not admit to child abuse, she assessed that Nordgren was not ready for family therapy.

77. Anderson further testified that she was repeatedly told by Craig Rice and Susan Vinge of the Nystrom group that the children were not ready to proceed with family therapy. Anderson testified that if she had been told the child N.E.N. was making repeated request to see her mother, Anderson would have had a conversation with N.E.N. However, contrary to this testimony, Anderson herself testified at the TPR trial, she knew N.E.N. had asked several times to meet with Anderson and N.E.N. was asking to do family therapy.

78. Craig Rice and Rochelle Anderson testified that they both consulted with Susan Vinge, the Managing Supervisor on a regular basis and Susan Vinge would have known or should have known of the activities which Craig Rice and Rochelle Anderson were engaged in with respect to Nordgren and Nordgren's children. Susan Vinge also endorsed and supported Craig Rice and Rochelle Anderson's activities in recommendations and letters sent to the Department concerning Nordgren's case.

79. The difficulty of family reunification therapy was compounded by the fact that there was a No Contact Order in place that prevented the therapists from even

moving to the second phase of bringing the family together physically. Anderson reported that the Department would have to lift the order. However, Hennepin County Juvenile District Court relied on the recommendations of the Nystrom group to reinforce the No Contact Order in place.

80. The Department Social Worker Mary Kay Libra, whom Anderson identified as instructing her to get Nordgren to admit to allegations of abuse, testified she was aware that Nordgren had a pending criminal case against her. Libra testified that in working with Nystrom therapist Anderson, part of Nordgren's plan involved making admissions. Libra clearly understood that without admissions of abuse from Nordgren, Anderson would not proceed with reunification.

81. The directives Department Social Worker Libra made to Nystrom therapist Rochelle Anderson went against Libra's knowledge about the goal of reunification in child protection proceedings. Libra testified she understood she was mandated by the legislature to provide reasonable efforts to families with children, both when children are in-home and out-of-home placement so that the children can either remain in the home or be reunited.

82. Libra testified family therapy was a case plan task for Nordgren and the intent of the family therapy was to work towards reunification. Libra testified the main goal is to provide the parent with services unless the Department has been relieved of reasonable efforts, that at no point in the case was the Department relieved of reasonable efforts to reunify this family, and that the reasonable efforts extend all the way until or if there is either reunification or a permanency finding extinguishing the parent-child relationship.

83. Libra testified Nordgren had completed parenting skills with Jackee Heslop of The Family Partnership. Nordgren participated in 26 sessions with Ms. Heslop over the course of six months, yet she was never afforded the ability to practice those skills because she was not allowed any visitation with her children during that time period. Libra conceded Nordgren had very little in the way of visitations and that the case was opened in August of 2015 and by January 2016 her visitations were cut off completely. Libra testified there were four social workers, an unusually high number, involved in Nordgren's case. Libra also confirmed when professionals were actually put into place to carry out the goals and objectives of the case plan, Nordgren had no contact with her children by that time. Libra also testified this is the only case throughout her 20 years in child protection where the Department had cut off all contact between parent and child. It was literally quite impossible for Nordgren to progress in her parenting ability if she could not work with or see her children. In making the referral to Headway, Department Social Worker Libra testified she knew early on Nancy Temple was not licensed and had never done reunification therapy.

84. On May 17, 2017 after relevant testimony, Christa Groshek, attorney for Respondent, submitted an oral motion requesting the Department provide Nordgren with the statutorily required reasonable efforts for reunification for the family. The Court granted the request.

85. Plaintiff was assigned to another family therapist to proceed with family reunification therapy, Nancy Temple from Headway Emotional Services. Temple started treating Nordgren weekly from July 17, 2017 (2 months prior) to the

conclusion of the TPR trial. Temple testified she agreed family therapy should occur under this family's specific circumstances. Temple opined if the children had resistance to reunification she had to work with the children first however because of conflicting schedules those sessions with the children never took place prior to court. Temple testified to be the reunification therapist, she had to have access to the children as well as the mother. However, she couldn't make any progress towards the goal of reunification because she never met the children. Temple confirmed in the situation where Nordgren had not been adjudicated or proven guilty of the things the children had complained of, there still was a way for families to acknowledge each other's feelings and concerns and reunify. And yet, Temple required Nordgren also to make admissions of wrongdoing as a precondition to begin therapy.

███████████████████████████████████████

█████████████████████████████████

███████████████████████████████████

█████████████████████████████

87.     Defendant Assistant Hennepin County Attorney Katy Stesniak was present during these proceedings, and knew or must have known, that the Nystrom therapist Anderson and Department Social Worker Libra's coordinated activities were in violation of Nordgren's Fifth Amendment right and was antithetical to the jurisprudence of the Fifth Amendment rights from self-incrimination that arose out of Hennepin County in the context of child protection services.

88. However, Defendant Assistant Hennepin County Attorney Katy Stesniak did not apprise the Hennepin County Juvenile Division Court of these violations nor state to the Court that Department Social Worker Libra had no authority and/or right under state law to direct a third-party agency to get a confession out of Nordgren before she could participate in family therapy.

89. Instead Defendant Assistant Hennepin County Attorney Katy Stesniak misrepresented to the court that Nordgren did not comply with the court-order plan as she did not complete family therapy. Department Social Worker Libra did concede that Nordgren substantially complied with all other requirements outlined in the court order.

90. Plaintiff Nordgren has only a high school education and obtained a high school diploma in 1992. Nordgren has never studied law nor does she have any legal training.

91. Plaintiff asserts that when Nystrom family therapist Rochelle Anderson was attempting to get Nordgren to admit to allegations of abuse, she did not understand that she had rights protected under the Fifth Amendment from self-incrimination or that Nystrom therapist Anderson's actions denying her family therapy unless she confessed to child abuse was a violation of her Fifth Amendment rights.

92. During the TPR trial proceedings the Plaintiff did not understand the legal ramifications of Anderson and Libra's admissions where they testified about their coordinated acts to deprive Nordgren of her Fifth Amendment rights.

93. Nordgren's attorney Christa Groskek did not explain to Plaintiff that the admissions made by Rochelle Anderson and Mary Kay Libra at trial were admissions relating to the violation of Nordgren's Fifth Amendment rights having a bearing on the outcome of the termination of her parental rights.

94. It was not until Nordgren purchased and obtained full transcripts of the TPR trial proceedings on January 17, 2019 when she was first alerted of the nature of Anderson and Libra's unlawful activities. Plaintiff Nordgren could not have acted diligently to uncover the unlawful activities until she obtained the transcripts and was able to have an attorney versed in legal matters alert her as she did not possess any legal knowledge or training in law.

95. The Findings of Fact, Conclusions of Law, and Order for Termination of Parental Rights and Orders Terminating Parental Rights and Appointing Guardian of A.J.N. and N.E.N. were issued on October 23, 2017.

96. The children remained with the foster parents pending the TPR proceedings and were subsequently adopted by their foster parents pursuant to an Adoption Decree issued on or about August 2, 2018.

97. As a result of the unlawful and concerted efforts of Department Social Worker Mary Kay Libra, Nystrom family therapist Rochelle Anderson, and Assistant Hennepin County Attorney Katy Stesniak to strip and deprive Nordgren of her parental rights of her two children by impinging on her 5th Amendment rights, Nordgren suffered from insomnia, threw herself into work often working three jobs at a time while maintaining very little sleep. By May 2019, at the age of 46,

Nordgren suffered a stress-induced heart attack which required a hospital stay and a long respite from her work.

98. On September 23, 2019, Plaintiff filed two motions, 1) Motion to Vacate Orders on Termination of Parental Rights Pursuant to Minn.R.Juv.Prot.P. 46.02 and Independent Action for Fraud and 2) Motion to Vacate the Decrees of Adoption for A.J.N. and N.E.N. Pursuant to Minn.R.Adopt.P. 47.02 and Independent Action for Fraud.

99. In Assistant Hennepin County Attorney Katy L. Stesniak's Response Memorandum to Plaintiff's Motions to Vacate, she formally requested that the Hennepin County Juvenile Court do not hold a hearing motion on Plaintiff's Motions to Vacate[1] in contravention of Minn.R.Juv.Pro.Pro. 14.06 which provides, "[u]pon request of a party who intends to file a notice of motion and motion, the court administrator *shall* schedule a hearing which shall take place within 15 days of the request".  (Emphasis added).

100. The Hennepin County Juvenile Division Court would not allow an evidentiary hearing and summarily denied Plaintiff's two motions in its Order Denying Motions to Vacate on December 12, 2019.  Plaintiff timely filed her Notice of Appeal from the Court's Order on January 8, 2020.   (See A20-0048).

101. Plaintiff filed for a Motion for Amendment of Findings of the Order Denying Motions to Vacate and Motion for a Hearing on the Motion Pursuant to

---

[1] In Hennepin County's Response entitled, "Memorandum of Law in Opposition to Motion for a New Trial and/or To Vacate Orders", filed with the Court on September 27, 2019, the County writes on page 2, "The Department believes Respondent Mother's motions are without merit and should be denied without a hearing." Additionally, the first heading of the Response Memorandum is entitled, "RESPONDENT MOTHER'S MOTIONS SHOULD BE DENIED WITHOUT A HEARING."

Minn.R.Juv.Prot.Pro. 21 and Minn.R.Adopt.Pro. 46.01 or in the Alternative Motion for Relief from the Order Pursuant to Minn.R.Juv.Prot.Pro. 22.02, Subp. E and Minn.R.Adopt.Pro. 47.02, Subp. E. on December 30, 2019.

102. The Hennepin County Juvenile Division Court issued its Order Denying Motion and Request for Hearing on January 23, 2020. Plaintiff timely filed her Notice of Appeal from the Court's Order on February 12, 2020. (See A20-0232).

103. The Minnesota Court of Appeals issued its Order Denying the Plaintiff's first appeal on the basis of lack of jurisdiction on February 11, 2020. (See A20-0048).

104. The Minnesota Court of Appeals issued its Order Denying Plaintiff her second appeal on the basis of lack of jurisdiction on February 14, 2020. (See A20-0232).

105. Plaintiff filed her Petition for a Writ of Mandamus in the Minnesota Court of Appeals for the Court to direct the Hennepin County Juvenile District Court to hold a hearing for Petitioner to hear her Motions to Vacate on July 29, 2020. (See In re C.N., Petitioner, A20-1011).

106. The Minnesota Court of Appeals denied Nordgren's Petition for a Writ of Mandamus on September 15, 2020.

## CAUSES OF ACTION

**COUNT ONE**
**VIOLATION OF THE CIVIL RIGHTS ACTS OF 1866 AND 1991**
**42 U.S.C. §1983, *et seq.***
**(Substantive Due Rights Against Hennepin County,**
**Hennepin County Health and Human Services,**
**Hennepin County Attorney Michael O. Freemen,**
**Assistant Hennepin County Attorney Katy L. Stesniak)**

107. Plaintiff realleges, and incorporate herein as if set forth in full, all paragraphs from above.

108. Plaintiff had the right to be free from the County unlawfully stripping her of her parental rights to her children without just cause under the Fourth Amendment, Fifth Amendment and Fourteenth Amendment of the Constitution of the United States.

109. This right is "clearly established" such that a reasonable social worker working at Defendant Hennepin County Department of Human Services and Public Health and CFS would know it is wrong and unethical to interfere in Plaintiff's case by directing a third-party agency such as Nystrom & Associates, Ltd. to force Plaintiff Nordgren to admit to allegations of child abuse and condition family therapy based on her willingness to admit to abusing her children against her Fifth Amendment right from self-incrimination. In doing so, Mary Kay Libra and Rochelle Anderson actively sought to prevent her from fully complying with the Hennepin County Court Order and resulted in the termination of Nordgren's parental rights to her two children.

110. It is equally well established that a person in Nordgren's position has a constitutional right to be free from the termination of her parental rights pursuant to court orders, or court orders obtained by fraud, misrepresentation or artifice.

111. Nordgren's Fifth Amendment right from self-incrimination is "clearly established" as outlined in the numerous cases the Department and the Hennepin County Attorney's Office was involved in as mentioned above. Having heard TPR trial testimony from the Department Social Worker Libra and Nystrom Rochelle Anderson concerning their concerted effort to violate the

Plaintiff's Fifth Amendment right and denying participation in family therapy when Plaintiff would not admit to allegations of abuse, Assistant Hennepin County Attorney Stesniak knowingly allowed fraud to be committed on the courts. Attorney Stesniak knowingly allowed fraud to be committed on the courts where Stesniak knew or should have known that Department Social Worker Libra possessed no authority or right under state law to direct a third-party such as Nystrom to coerce a parent to admit to allegations of abuse in order to be able to participate in family therapy. Instead of informing the Hennepin County Juvenile Court of the concerted acts to deprive Nordgren of her 5th Amendment rights, Attorney Stesniak acted unlawfully in arguing and effectuating the termination of Nordgren's parental rights by asserting in the TPR trial court proceedings that Nordgren failed to comply with the court order when she did not complete family therapy.

112. This action clearly violated her rights under *In the Matter of the Welfare of the Child of J.P. and M.G., Parents*, 2006 WL 3290624 (Minn.App Nov. 14, 2006), where the Court held a parent's denial of an allegation of abuse is not a permissible basis to determine non-compliance, and the denial should not have been treated as clear and convincing evidence that a parent failed to substantially comply with a case plan and utilize the services offered to correct the conditions that led to the out-of-home placement.

113. This action also clearly violated her rights under *Matter of Welfare of J.W. and A.W.*, 415 N.W.2d 879 (Minn. 1987) where the Minnesota Supreme Court has held that "the state may not compel therapy treatment that would require appellants

incriminate themselves".

114. The Defendant Hennepin County, Hennepin County Department of Human Services and Public Health and CFS through its agent social worker, Mary Kay Libra, Hennepin County Attorney Mike O. Freeman, and Assistant Hennepin County Attorney Stesniak all acting under color of law acted with malice and intent to cause injury and acted with a willful and conscious disregard of the Plaintiff's rights in a fraudulent, illegal manner.

115. Further, Defendants' actions were taken with deliberate indifference to Nordgren's rights by stripping Nordgren's parental rights of her children resulting in the loss of love, comfort, care and affection of her children.

116. As a direct and foreseeable consequence of these Defendants' actions, Nordgren was deprived of her rights under the Fourth, Fifth and Fourteenth Amendments to the United States Constitution.

117. As a direct and proximate result of these Defendants' actions, Nordgren has suffered, and will continue to suffer economic, physical, mental, emotional injury and loss of familial association and irreparable harm to reputation all to an extent and in an amount subject to proof at trial.

**COUNT TWO**
**VIOLATION OF THE CIVIL RIGHTS ACTS OF 1866 AND 1991**
**42 U.S.C. §1983, *et seq.***
**(Procedural Due Rights Hennepin County, Hennepin County Health and Human Services, Hennepin County Child and Family Services Social Worker, Mary Kay Libra Hennepin County Attorney Michael O. Freemen, Assistant Hennepin County Attorney Katy L. Stesniak)**

118. Nordgren realleges, and incorporates herein as if set forth in full, all paragraphs

from above.

119.  As outlined above, Nordgren had the right to be free from the unlawful deprivation of her Fifth Amendment rights and the unlawful deprivation of her parental rights of her children under the Fourth Amendment and Fourteenth Amendment of the Constitution of the United States.

120.  This right is "clearly established" such that a reasonable person in Defendant Hennepin County, Defendant Hennepin County Department of Human Services and Public Health, Defendant Hennepin County Attorney Michael O. Freeman and Defendant Assistant Hennepin County Attorney Katy L. Stesniak, and Hennepin County Child and Family Services Social Worker Mary Kay Libra's position would know it is wrong and unethical to interfere in a parent's right to have continued relations and association with their children and the concurrent right to be able to rear their children and that such right may not be taken away unlawfully under color of state law.

121.  Testimonial evidence adduced at the TPR trial show Department Social Worker Libra under color of state law directed Nystrom & Associates, Ltd. family therapist Rochelle Anderson to get Nordgren to admit to allegations of child abuse and where Anderson conditioned family therapy based only upon Nordgren's agreement to admit to the abuse.

122.  It was unlawful for Defendant Hennepin County, Defendant Hennepin County Department of Human Services and Public Health, Defendant Hennepin County Attorney Michael O. Freeman, Defendant Assistant Hennepin County Attorney Katy L. Stesniak, and Hennepin County Child and Family Services Social Worker

Mark Kay Libra to represent to the Hennepin County Juvenile Division Court that the Department possessed any right and/or authority under state law to direct a third-party agency such as Nystrom to condition family therapy in violation of Plaintiff's Fifth Amendment right from self-incrimination. These actions of depriving Plaintiff of her Fifth Amendment rights by conditioning therapy upon admissions are in contravention of the holding in *Matter of Welfare of J.W. and A.W.*, 415 N.W.2d 879, 883 (Minn. 1987) or the argument that Nordgren's denial of child abuse could serve as a basis for non-compliance of the Hennepin Court order are in contravention of the holding *In the Matter of the Welfare of the Child of J.P. and M.G., Parents,* 2006 WL 3290624 at *1 (Minn.App Nov. 14, 2006).

123. It is equally well established that a person in Nordgren's position has a constitutional right to have her parental rights restored where her rights had been illegally terminated by court order obtained by fraud, misrepresentation or artifice.

124. It was unlawful for the Defendant Hennepin County Attorney Freemen and Assistant Hennepin County Attorney Stesniak to deprive Nordgren the opportunity to have her motion hearings heard on her Motions to Vacate the Orders which terminated her parental rights and effectuated the adoption of her children by the foster parents. Assistant Hennepin County Attorney Stesniak, in her Response Memorandum on Plaintiff's Motions to Vacate, formally asked the Hennepin County Juvenile Division Court not to hold a hearing on her Motions to Vacate as a means to deny Nordgren her rights to correct the injustice and fraud which had been perpetrated on the court.

125. The Assistant Hennepin County Attorney Stesniak, acting under color of law, induced the Hennepin County Juvenile Division Court to fail to follow the mandatory Minnesota Rules of the Juvenile Protection to hold a motion hearing and deprived Plaintiff of a fair opportunity to have her parental rights restored violating Nordgren's Fourth Amendment right to procedural due process. Defendants' conduct was without proper justification or authority.

126. Defendant Hennepin County, Defendant Hennepin County Department of Human Services and Public Health, and Defendant Hennepin County Attorney Freeman are vicariously liable for the conduct of their agents inclusive under applicable statutory and case law. Defendants inclusive, and each of them, acted with malice and with the intent to cause injury to Nordgren or acted with a willful and conscious disregard and/or deliberate indifference of Nordgren's rights.

127. As a direct and foreseeable consequence of these actions, Nordgren was deprived of her rights under the Fourth, Fifth and Fourteenth Amendments to the United States Constitution.

128. As a direct and proximate result of these Defendants' actions, Nordgren has suffered, and will continue to suffer economic, physical, mental, emotional injury and loss of familial association and irreparable harm to reputation all to an extent and in an amount subject to proof at trial.

**COUNT THREE**
**VIOLATION OF THE CIVIL RIGHTS ACTS OF 1866 AND 1991**
**42 U.S.C. §1983, *et seq.***
**(MONELL V. DEP'T OF SOCIAL SERVS., 436 U.S. 658 (1977)**

**(Hennepin County, Hennepin County Department of Human Services and Public**

**Health, David J. Hough, Hennepin County Administrator, Jodi Wentland, Hennepin County Director of Human Services, Joan Granger-Kopesky, Director, Hennepin County Child and Family Services, Mary Kay Libra, Hennepin County Child and Family Services Social Worker, Jodi Harpstead, Commissioner, Minnesota Department of Human Services, Michael O. Freeman, Hennepin County Attorney, Katy L. Stesniak, Assistant Hennepin County Attorney)**

129.    Nordgren realleges, and incorporates herein as if set forth in full, all paragraphs from above.

130.    At the time of the events alleged above, all the Defendants named above in this section owed Nordgren a duty to use due care in the hiring, training, supervision, discipline, and retention of the Assistant Hennepin County Attorney's at the Hennepin County Attorney's Office and the Hennepin County Department of Human Services and Public Health personnel.

131.    Defendant County of Hennepin, including through its entity, Hennepin County Department of Human Services and Public Health and through its entity the Hennepin County Attorney's Office through its agent, Hennepin County Attorney Michael O. Freeman established and/or followed policies, procedures, customs, usages and/or practices (hereinafter referred to collectively as "policy" or "policies") and which policies were the moving force behind the violations of Nordgren's constitutional rights as alleged herein, including those arising under the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution, by and through, but not limited to, the following policies, practices, customs and/or procedures:

a. haphazard policies where one social worker assigned to a particular case has one idea of the goals of the case plan and a second social worker has a totally

different idea[2] of the goals of the case;

b.  the policy which permits Department case workers and social workers and Assistant Hennepin County Attorney's to violate parents' 5th Amendments rights repeatedly and across a span of more than 30 years;

c.  the policy which permits Department case workers and social workers to coerce and threaten parents to admit to allegations of child abuse or face permanently losing their children;

d.  the policy which permits Department case workers and social workers to dictate or direct mental health providers or family therapists to coerce parents to admit to allegations of abuse;

e.  the policy which permits Assistant Hennepin County Attorneys to ratify unlawful activities of Department case workers and social workers who dictate or direct mental health providers or family therapists to coerce parents to admit to allegations of abuse;

f.  the policy which permits Assistant Hennepin County Attorneys to encourage, assist, facilitate and cover up unlawful activities of Department case workers and social workers who dictate or direct mental health providers or family therapists to coerce parents to admit to allegations of abuse;

g.  the policy of not training, supervising, disciplining, or discouraging Department case workers and social workers to dictate or direct mental health

---

[2] See *M.D.O.* case, supra. Steve Heckler, the first social worker working on the case, testified the Department wanted an explanation of Maria's death consistent with the medical findings as outlined in the Hennepin County's court-order case plan. The second social worker assigned to the case testified Ostlund had to admit responsibility for Maria's failure to thrive, for a pattern of abuse against Maria and for admitting responsibility for shaking the child to death.

providers or family therapists to coerce parents to admit to allegations of abuse;

h.  the policy of not training, supervising or directing Assistant County Attorney to condemn, report, or otherwise stop the violations of parents' 5th amendment rights violations when they are witness to such activities.

132.  County of Hennepin breached its duties and obligations to Nordgren by including but not limited to, failing to establish, implement, and follow the correct and proper Constitutional policies, procedures, customs and practices; by failing to properly select, supervise, train, control, and review its agents and employees as their compliance with Constitutional safeguards; and by knowingly, or with deliberate indifference permitting Department Social Worker Mary Kay Libra and Assistant Hennepin County Stesniak to engage in the unlawful and unconstitutional conduct as herein alleged.

133.  County of Hennepin knew, or should have known, that by breaching the above mentioned duties and obligations that it was foreseeable that said failure of breach would, and did, cause Nordgren to be injured and damaged, and her constitutional rights to be impaired, by the wrongful policies and acts as alleged herein, and that such breaches occurred in contravention of public policy and Defendants' legal duties and obligations to Nordgren; and that such policies, practices, customs and procedures were the moving force behind the constitutional violations alleged herein above.

134.  As a direct and proximate result of the actions and/or inactions of County of Hennepin, Nordgren has suffered, and will continue to suffer economic, physical, mental, emotional injury and loss of familial association and irreparable harm to

reputation all to an extent and in an amount subject to proof at trial.

## COUNT FOUR
### VIOLATION OF THE CIVIL RIGHTS ACTS OF 1866 AND 1991
### 42 U.S.C. §1983, *et seq.*
### (MONELL V. DEP'T OF SOCIAL SERVS., 436 U.S. 658 (1977)
### NEGLIGENT HIRING, TRAINING AND SUPERVISION

**(Against Hennepin County, Hennepin County Department of Human Services and Public Health, David J. Hough, Hennepin County Administrator, Jodi Wentland, Hennepin County Director of Human Services, Joan Granger-Kopesky, Director, Hennepin County Child and Family Services, Jodi Harpstead, Commissioner, Minnesota Department of Human Services, Michael O. Freeman, Hennepin County Attorney)**

135. Nordgren realleges, and incorporates herein as if set forth in full, all paragraphs from above.

136. At the time of the events alleged above, the Defendant Department and all its personnel owed Nordgren a duty to use due care with respect to undertaking every aspect of Nordgren's case and to abide by and follow Minnesota statutes and state case law.

137. The Defendant Department and personnel knowingly and willfully failed to place Plaintiff's children with a relative of Plaintiff's pursuant to pursuant to Minn. Stat. 260C.212, subd. 2 (2014).

138. The Defendant Department and personnel knowingly and willfully disregarded Plaintiff's complaints regarding the Department personnel's outright statements to her that Plaintiff would never get her children back. The Department through its agents made every attempt to thwart reunification and were successful at permanently stripping Plaintiff's parental rights of her two children with impunity.

139. Defendant Hennepin County, Defendant Hennepin County Department of Human Services and Public Health, Defendant David J. Hough, the Hennepin County Administrator, Defendant Jodi Wentland, Hennepin County Director of Human Services, Defendant Joan Granger-Kopesky, Direct of Hennepin County Child and Family Services, and Defendant Jodi Harpstead, Commission of Minnesota Department of Human Services were negligent in their oversight, management, supervision and training of the Hennepin County Department of Human Services and Public Health and the Child and Family Services Division personnel. All the Defendants named herein this section failed to provide Social worker Mary Kay Libra and other personnel with proper training and failed to outline proper procedures to them with respect to appropriate conduct in interacting within the Department and interacting externally with case parents and provider relationships such as Nystrom & Associates, Ltd.

140. The failings of the disorganized Hennepin County Department of Human Services and Public Health are well documented in the Casey Report and is evidenced by the statements and investigation which show many of the case workers, social workers, and supervisors often worked independently in their own "silos" and there was a lack of communication, supervision, and training. This information concerning the failings of the Department was available to all named municipal Defendants in June 2015 prior to the time Plaintiff Nordgren's case commenced at the Department.

141. The areas where participants highlighted a need for additional training in the Casey Report have much to bear on the outcome of Plaintiff's case as there was a

lack of communication within the hierarchal system of leadership at the Department to address Plaintiff's complaints, where case supervision failed in providing Plaintiff with the needed resources that were identified to support her case and where the relationship between the Department and the provider groups were facilitated to work against Plaintiff rather than to assist her.

142.  In committing the aforementioned acts and/or omissions, Defendant Hennepin County, Defendant Hennepin County Department of Human Services and Public Health, Defendant David J. Hough, the Hennepin County Administrator, Defendant Jodi Wentland, Hennepin County Director of Human Services, Defendant Joan Granger-Kopesky, Direct of Hennepin County Child and Family Services, and Defendant Jodi Harpstead, Commission of Minnesota Department of Human Services negligently breached their duties to use due care in hiring, supervision, discipline and training which directly and proximately resulted in the injuries and damages to Plaintiff Nordgren as alleged herein.

143.  At the time of the events alleged above, Hennepin County, Defendant Hennepin County Attorney Michael O. Freeman and Defendant Assistant Hennepin County Attorney Katy L. Stesniak owed Nordgren a duty to use due care with respect to undertaking every aspect of Nordgren's case and to abide by and follow legal duties under Minnesota Statute §388, the provisions under the Juvenile Court Act and the Rules of Juvenile Protection Procedures.

144.  Defendant Assistant Hennepin County Attorney Katy L. Stesniak knowingly facilitated and permitted Nordgren's 5th Amendment rights to be violated where Stesniak permitted Defendant Anderson and Defendant Libra to testify

concerning their coordinated efforts to terminate Nordgren's parental rights by engaging in unlawful scheme to condition Nordgren's participation in family therapy only if Nordgren would admit to abuse.   Defendant Stesniak did not inform the Court that Defendant Libra did not possess any authority or right under state law to direct the Nystrom therapist to do so or otherwise challenge, condemn or attempt to bring to the Court's attention that the activities Libra and Anderson testified to were illegal.

145. Hennepin County and Defendant Hennepin County Attorney Michael O. Freeman failed to provide Defendant Assistant Hennepin County Attorney Katy L. Stesniak with proper training and failed to outline proper procedures to her and other Assistant County Attorneys with respect to appropriate conduct in interacting with parents whose civil rights and constitutional rights are to be upheld.

146. Hennepin County and Defendant Hennepin County Attorney Michael O. Freeman negligently breached their duties to use due care in hiring, supervision, discipline and training Assistant County Attorneys which directly and proximately resulted in the injuries and damages to Plaintiff Nordgren as alleged herein.

147. As a direct and proximate result of these Defendants' actions, Nordgren has suffered, and will continue to suffer economic, physical, mental, emotional injury and loss of familial association and irreparable harm to reputation all to an extent and in an amount subject to proof at trial.

**COUNT FIVE**
**VIOLATION OF THE CIVIL RIGHTS ACTS OF 1866 AND 1991**
**42 U.S.C. §1985, *et seq.* (CONSPIRACY)**

**(Against Hennepin County, Hennepin County Department of Human Services and Public Health, Mary Kay Libra, Hennepin County Child and Family Services Social Worker, Michael O. Freeman, Hennepin County Attorney, Katy L. Stesniak, Assistant Hennepin County Attorney, Nystrom & Associates, Ltd., Rochelle Anderson, Craig Rice, Susan Vinge)**

,

148. Nordgren realleges, and incorporates herein as if set forth in full, all paragraphs from above.

149. Hennepin County, Hennepin County Department of Human Services and Public Health, and Hennepin County Attorney, Michael O. Freeman, Assistant Hennepin County Attorney, Katy L. Stesniak, Hennepin County Child and Family Services Social Worker Mary Kay Libra and Nystrom & Associates, Ltd. family therapists Rochelle Anderson, Craig Rice and Susan Vinge are "persons," as that term is used in the text of 42 U.S.C. §1985.

150. Hennepin County, Hennepin County Department of Human Services and Public Health, and Hennepin County Attorney, Michael O. Freeman, Assistant Hennepin County Attorney, Katy L. Stesniak had prior knowledge of the wrongs conspired to be committed by Defendants Hennepin County Child and Family Services Social Worker Mary Kay Libra and Nystrom & Associates, Ltd. family therapists Rochelle Anderson, Craig Rice and Susan Vinge.

151. Hennepin County, Hennepin County Department of Human Services and Public Health, and Hennepin County Attorney, Michael O. Freeman, and Assistant Hennepin County Attorney, Katy L. Stesniak had the power to prevent or aid in preventing the commissions of the wrongs conspired to be committed by Defendants Hennepin County Child and Family Services Social Worker Mary Kay Libra and Nystrom & Associates, Ltd. family therapists Rochelle Anderson, Craig

Rice and Susan Vinge and which by reasonable diligence could have been prevented, but they neglected and/or refused to exercise such power after being informed.

152. As a direct and proximate result of the neglect and/or refusal of Defendants Hennepin County, Hennepin County Department of Human Services and Public Health, and Hennepin County Attorney, Michael O. Freeman, and Assistant Hennepin County Attorney, Katy L. Stesniak to prevent or to aid in preventing the commissions of the wrongs conspired to be committed by the Defendants Hennepin County Child and Family Services Social Worker Mary Kay Libra and Nystrom & Associates, Ltd. family therapists Rochelle Anderson, Craig Rice and Susan Vinge, Nordgren has suffered injuries and damages as alleged herein.

153. Defendants Hennepin County, Hennepin County Department of Human Services and Public Health, and Hennepin County Attorney, Michael O. Freeman, and Assistant Hennepin County Attorney, Katy L. Stesniak's actions evidence a reckless and callous disregard for, and deliberate indifference to, Nordgren's constitutional rights.

154. Defendants, and each of them, acted with malice and with the intent to cause injury to Nordgren or acted with a willful and conscious disregard of Nordgren's rights.

155. As a direct and foreseeable consequence of this conspiracy, Nordgren was deprived of her rights under the Fourth, Fifth and Fourteenth Amendments to the United States Constitution.

156. As a direct and proximate result of these Defendants' actions, Nordgren suffered,

and will continue to suffer economic, physical, mental, emotional injury and loss of familial association and irreparable harm to reputation all to an extent and in an amount subject to proof at trial.

## COUNT SIX
## NEGLIGENT/INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

**(Against Hennepin County, Hennepin County Department of Human Services and Public Health, Mary Kay Libra, Hennepin County Child and Family Services Social Worker, Michael O. Freeman, Hennepin County Attorney, Katy L. Stesniak, Assistant Hennepin County Attorney, Nystrom & Associates, Ltd., Rochelle Anderson, Craig Rice, Susan Vinge)**

157. Nordgren realleges, and incorporates herein as if set forth in full, all paragraphs from above.

158. Defendant Assistant Hennepin County Attorney Katy L. Stesniak, Hennepin County Child and Family Services Social Worker, Mary Kay Libra, Nystrom & Associates, Ltd. employees Rochelle Anderson, Craig Rice, and Susan Vinge acted individually and in concert to illegally effectuate the termination of Nordgren's parental rights to her two children by unlawfully conditioning participation of family reunification only if Plaintiff would admit to child abuse and mispresenting to the Hennepin County Juvenile Court that Nordgren failed to comply with the court ordered case plan's requirement of completing family therapy.

159. In combination with the conduct described herein, these actions evidenced a pattern of extreme and outrageous behavior that is shocking to the conscience of any ordinary citizen that was pursued with the intent to cause and resulted in Nordgren suffering severe emotional distress.

160. Because of Defendants' intentional and outrageous conduct, Nordgren has suffered emotional, mental and physical conditions generally recognized and diagnosed by trained professionals as stated above.

161. As a direct and proximate result of these Defendants' actions, Nordgren has suffered, and will continue to suffer economic, physical, mental, emotional injury and loss of familial association and irreparable harm to reputation all to an extent and in an amount subject to proof at trial.

WHEREFORE, to redress the injuries proximately and directly caused by Defendants' conduct as stated in Paragraphs above, and to prevent the substantial risk of irreparable injury to other person in the State of Minnesota as a result of the policies, customs, practices and supervisory misconduct alleged herein, Plaintiff respectfully requests this Court.

1. Order Defendants to pay nominal, general, special and compensatory and general damages in an amount in excess of Fifty Thousand ($50,000.00) Dollars to be established at trial;

2. Order all relief available under Title VII, 42 U.S.C. §1983 as amended, et seq. and 42 U.S.C. §1985 including punitive damages;

4. Order Defendants to pay attorney fees, costs and disbursements for bringing this lawsuit and as allowed by statute;

5. Order Defendants to pay interest at the legal rate on such damages as appropriate, including pre- and post- judgment interest;

6. Allow Plaintiff leave to allow for amendment of this Complaint to include

additional appropriate claims and damages that become apparent after conducting

discovery; and

      7.  Order a jury trial on all issues

      8.  Grant any further relief that the Court deems just and equitable.


**JURY TRIAL DEMAND**

Plaintiff demands a jury trial as to all claims so triable.


Date:   1/16/2021

/s/ May C. Yang

May C. Yang
MN Atty. 0389166
LAW OFFICE OF MAY C. YANG
P.O. Box 16202
St. Paul, Minnesota MN 55116
Telephone: (612) 408-5558
Facsimile: (651) 340- 6454
Attorney for Plaintiff

ACKNOWLEDGEMENT

The undersigned acknowledges that costs, disbursements, witness fees and attorney fees
may be awarded pursuant to Minn. Stat. § 529.211.

/s/ May C. Yang

May C. Yang